738 S.E.2d 1

Jeffrey JENKINS and M. Jean McNabb,
Plaintiffs Below, Petitioners

v.

CITY OF ELKINS, Stephen P. Stanton,
Westfield Insurance Company, National
Union Fire Insurance Company, and
Bombardier Aerospace Corporation, De-
fendants Below, Respondents.

No. 11–1059.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 16, 2012.

Decided Nov. 15, 2012.

Concurring and Dissenting in Part Opinion of
Justice Benjamin
Nov. 20, 2012.

David A. Jividen, Chad C. Groome, Jividen Law Offices, Wheeling, WV, David J. Straface, John R. Angotti, Morgantown, WV, for Petitioners.

Amy Smith, Monte L. Williams, Carlie M. Parker, Steptoe & Johnson, Morgantown, WV, for Respondents City of Elkins and Stephen P. Stanton.

Glen A. Murphy, Andrew S. Dornbos, Don C. Parker, Spilman Thomas & Battle, Charleston, WV, for Respondent National Fire Insurance Company.

Susan R. Snowden, Martin & Seibert, L.C., Martinsburg, WV, for Respondent Westfield Insurance Company.

Michelle L. Gorman, Mary Margaret Hill, Pietragallo Gordon Alfano Bosick & Raspanti, Weirton, WV, for Respondent Bombardier Aerospace Corporation.

DAVIS, Justice:

This appeal was brought by Jeffrey Jenkins and his spouse M. Jean McNabb, Plaintiffs below and Petitioners herein, from a summary judgment order of the Circuit Court of Harrison County. The trial court's order granted summary judgment in favor of the City of Elkins, Stephen P. Stanton, and National Union Fire Insurance Company. The order also granted summary judgment

in part to Westfield Insurance Company and Bombardier Aerospace Corporation.[1] The issues presented in this case are: (1) whether summary judgment was properly granted to the City of Elkins, Stephen P. Stanton, and National Union Fire Insurance Company based upon statutory immunity; (2) whether uninsured motorist coverage is triggered when a tortfeasor has immunity; (3) whether the phrase "legally entitled to recover" is ambiguous; (4) whether "government owned vehicle" policy exclusions violate public policy; and (5) whether a policy exclusion for an injury arising out of and in the course of employment precluded medical payment coverage. After listening to arguments of the parties and a careful review of the briefs and record, we affirm, in part; reverse, in part; and remand this case for further disposition.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The facts of this case show that on or about October 27, 2008, Jeffrey Jenkins was injured during an automobile accident with Stephen P. Stanton. At the time of the accident, Mr. Jenkins was operating a vehicle owned by his employer, Bombardier Aerospace Corporation (hereinafter "Bombardier"). Also at the time of the accident, Mr. Stanton was driving a vehicle owned by his employer, the City of Elkins. The injuries Mr. Jenkins sustained included a left hip dislocation, left hip fracture, and left open tibia fracture. As a result of the accident occurring during the course of Mr. Jenkins' employment, he received workers' compensation benefits in the amount of $170,823.92.[2]

On or about April 29, 2010, Mr. Jenkins and his wife filed an action against the City of Elkins and Mr. Stanton to recover for the injuries that occurred as a result of the automobile accident.[3] At the time the action was filed, the Plaintiffs served a notice of the complaint on their personal automobile insur-

---

1. This appeal also involves cross assignments of error by Westfield Insurance Company and Bombardier Aerospace Corporation.

2. The record indicates that Mr. Jenkins' workers' compensation claim was reserved for an addi-

tional $110,587.00 for any future claim benefit payments.

3. The claim of Mr. Jenkins' wife was derivative and based upon loss of consortium, companionship, and society.

er, Westfield Insurance Company (hereinafter "Westfield").

Although not named as a defendant, Westfield filed an answer to the complaint.[4] In that answer, Westfield set out a counterclaim for declaratory judgment, a crossclaim against the City of Elkins and Mr. Stanton, and a third party claim against Bombardier[5] and National Union Fire Insurance Company (hereinafter "National").[6]

The Plaintiffs filed an answer to Westfield's counterclaim. In that answer, the Plaintiffs set out a claim for declaratory judgment relief against all of the parties.

Motions for summary judgment were filed by all of the parties.[7] On June 8, 2011, the circuit court entered an order on the respective motions for summary judgment. The order found that the City of Elkins and Mr. Stanton were immune from liability and therefore were entitled to summary judgment. It was also determined that National was entitled to summary judgment because its policy incorporated the immunity provided to the City of Elkins and Mr. Stanton. The summary judgment order further determined that a "government vehicle" exclusion contained in the policy covering Bombardier[8] and the policy issued by Westfield was valid and enforceable for any claims by the Plaintiffs above the statutory uninsured minimum coverage of $20,000.[9] That is, Bombardier and Westfield were subject to payment of damages of not more than $20,000 each.[10] Finally, the circuit court ruled that the Plaintiffs were not entitled to auto medical coverage under the policy covering Bombardier and the policy issued by Westfield because Mr. Jenkins' injuries were sustained during the course of his employment.[11] This appeal followed entry of the summary judgment order.[12]

---

4. Under W. Va.Code § 33–6–31(d) (1998) (Repl. Vol.2011), an uninsured or underinsured insurance carrier has "the right to file pleadings and to take other action allowable by law in the name of the owner, or operator, or both, of the uninsured or underinsured motor vehicle or in its own name." This Court has explained that "[t]he language of W. Va.Code § 33–6–31(d), that allows an uninsured or underinsured motorist carrier to answer a complaint in its own name is primarily designed to enable the carrier to raise policy defenses it may have against the plaintiff under its uninsured or underinsured policy." Syl. pt. 14, *State ex rel. Allstate Ins. Co. v. Karl*, 190 W.Va. 176, 437 S.E.2d 749 (1993).

5. Westfield had originally named Gallagher Bassett Service, an insurance administrator for Bombardier, as a third party defendant. However, the subsequent style of the litigation has listed only Bombardier as a third party defendant, even though Gallagher Bassett Service continued to be cited in memoranda.

6. National is the insurer for the City of Elkins and Mr. Stanton. Westfield wrongly named AIG as the insurer. National was later substituted as the correct party.

7. The City of Elkins and Mr. Stanton had initially filed a motion to dismiss for failure to state a claim.

8. Bombardier's insurer, Greenwich Insurance Company, was not a named party.

9. *See* W. Va.Code § 17D–4–12(b)(2) (1991) (Repl. Vol.2009).

10. Bombardier's policy provided for a maximum uninsured payment of $1,000,000.00, whereas the Westfield policy provided for a maximum uninsured payment of $500,000.00.

11. The Plaintiffs' reply brief incorrectly stated that the summary judgment order was silent on auto medical payments coverage by Westfield. The summary judgment order specifically stated that "Plaintiffs are not entitled to recover under Westfield's auto medical payments coverage." The Plaintiffs have not appealed this ruling by the circuit court, therefore the issue of auto medical payments under the Westfield policy is waived and not before this Court. *See Perrine v. E.I. du Pont de Nemours & Co.*, 225 W.Va. 482, 601, 694 S.E.2d 815, 934 (2010) ("Although the raise or waive rule is usually invoked for errors or irregularities at the trial court level, the rule has equal force and application at the appellate level.").

12. Although the order granted only partial summary judgment to Bombardier and Westfield, the ruling was final for appeal purposes. The Plaintiffs indicated in their reply brief that both Bombardier and Westfield offered to pay the $20,000 uninsured minimum limit after the summary judgment order was entered. The reply brief appears to suggest that the offers were refused in order to appeal the ruling regarding Bombardier and Westfield. Insofar as the offers were made, only a ministerial task remained regarding the partial summary judgment to Bombardier and Westfield. We have indicated that "a judgment that does not determine damages is a final appealable order when the computation of damages is mechanical and unlikely to produce a second

## II.

### STANDARD OF REVIEW

This is an appeal from a summary judgment order. We have made clear that our standard of review of a summary judgment order is *de novo*. *See* Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994) ("A circuit court's entry of summary judgment is reviewed *de novo*.").

## III.

### DISCUSSION

Five errors have been assigned for this Court's determination on appeal: (1) whether summary judgment was properly granted to the City of Elkins, Stephen P. Stanton, and National Union Fire Insurance Company based upon statutory immunity; (2) whether uninsured motorist coverage is triggered when a tortfeasor has immunity; (3) whether the phrase "legally entitled to recover" is ambiguous; (4) whether "government owned vehicle" policy exclusions violate public policy; and (5) whether a policy exclusion for an injury arising out of and in the course of employment precluded medical payment coverage. We will consider them in turn.

#### A. Summary Judgment in Favor of the City of Elkins, Mr. Stanton, and National

The first issue raised by the Plaintiffs is that the circuit court committed error in granting summary judgment to the City of Elkins, Mr. Stanton, and National. The Plaintiffs make two arguments for reversing summary judgment as to these defendants: (1) this Court should overrule *O'Dell v. Town of Gauley Bridge*, 188 W.Va. 596, 425 S.E.2d 551 (1992), and (2) National's policy did not preserve immunity. We will address each argument separately.

**1. The O'Dell decision.** The Plaintiffs argue that this Court should revisit the decision in *O'Dell*, in order to strip the City of Elkins, Mr. Stanton, and National of the immunity granted by W. Va.Code § 29–12A–5(a)(11) (1986) (Repl.Vol.2008). This

appeal because the only remaining task is ministerial, similar to assessing costs." Syl. pt. 3, in

statute provides that "[a] political subdivision is immune from liability if a loss or claim results from … [a]ny claim covered by any workers' compensation law or any employer's liability law[.]"

In *O'Dell* we rejected constitutional challenges to the statute and held that W. Va.Code, 29–12A–5(a)(11), giving political subdivisions immunity from tort liability in suits by injured persons whose claims are covered by workers' compensation or employer's liability laws, does not violate the equal protection principles of Article III, Section 10 or the "certain remedy" provision of Article III, Section 17 of the West Virginia Constitution.

Syl. pt. 4, *O'Dell*, 188 W.Va. 596, 425 S.E.2d 551. It was also held in *O'Dell* that "W. Va.Code, 29–12A–5(a)(11), clearly contemplates immunity for political subdivisions from tort liability in actions involving claims covered by workers' compensation even though the plaintiff was not employed by the defendant political subdivision at the time of the injury." Syl. pt. 6, *O'Dell*, 188 W.Va. 596, 425 S.E.2d 551.

The Plaintiffs in the instant case do not dispute that *O'Dell* provides immunity to the City of Elkins, Mr. Stanton and National because Mr. Jenkins received workers' compensation. To get around the application of *O'Dell*, the Plaintiffs have asked this Court to overrule that decision. The Plaintiffs have alleged that *O'Dell* wrongly concluded that W. Va.Code § 29–12A–5(a)(11) was applicable to an injured plaintiff who was not employed by the political subdivision being sued.

We have considered the Plaintiffs' arguments for overruling *O'Dell* and find that none of those arguments justify deviating from *stare decisis*. "[T]he doctrine of *stare decisis* requires this Court to follow its prior opinions." *State Farm Mut. Auto. Ins. Co. v. Rutherford*, 229 W.Va. 73, 83, 726 S.E.2d 41, 51 (2011) (Davis, J., concurring, in part, and dissenting, in part). In Syllabus point 2 of *Dailey v. Bechtel Corp.*, 157 W.Va. 1023, 207 S.E.2d 169 (1974), we held that

part, *C & O Motors, Inc. v. West Virginia Paving, Inc.*, 223 W.Va. 469, 677 S.E.2d 905 (2009).

"[a]n appellate court should not overrule a previous decision recently rendered without evidence of changing conditions or serious judicial error in interpretation sufficient to compel deviation from the basic policy of the doctrine of stare decisis, which is to promote certainty, stability, and uniformity in the law." Such adherence to prior decisions of this Court, and the consistency among the rulings of this Court that necessarily results therefrom, is particularly warranted when those prior decisions involve a matter of statutory construction. In this regard, we have adamantly held that "[o]nce this Court determines a statute's clear meaning, we will adhere to that determination under the doctrine of stare decisis." *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 588 n. 17, 466 S.E.2d 424, 439 n. 17 (1995). *Accord Patterson v. McLean Credit Union*, 491 U.S. 164, 172, 109 S.Ct. 2363, 2370, 105 L.Ed.2d 132 (1989) ("Considerations of stare decisis have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated[.]").

In this case, no relevant circumstances have changed so as to require a departure from our prior precedent interpreting W. Va.Code § 29–12A–5(a)(11). It has been twenty years since the decision in *O'Dell.* During that time, the Legislature could have rewritten the statute so as to nullify *O'Dell's* interpretation of W. Va.Code § 29–12A–5(a)(11). The fact that the Legislature has not done so is clear evidence that the *O'Dell* court's decision is correct.

**2. National's policy preserved immunity.** The Plaintiffs also contend that summary judgment in favor of the City of Elkins, Mr. Stanton, and National was not proper because the policy issued by National did not preserve the immunity set out under W. Va.Code § 29–12A–5(a)(11). This issue requires the Court to examine relevant language in the insurance policy. We have held that "[l]anguage in an insurance policy should be given its plain, ordinary meaning." Syl. pt. 1, *Soliva v. Shand, Morahan & Co., Inc.*, 176 W.Va. 430, 345 S.E.2d 33 (1986), *abrogated on other grounds by National*

*Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987). Thus, "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl., *Keffer v. Prudential Ins. Co. of America*, 153 W.Va. 813, 172 S.E.2d 714 (1970). *See also* Syl. pt. 2, *Shamblin v. Nationwide Mut. Ins. Co.*, 175 W.Va. 337, 332 S.E.2d 639 (1985) ("Where provisions in an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed.").

The relevant language of National's policy is contained in the Certificate of Liability Insurance and provides as follows:

THE INSURANCE EVIDENCED BY THIS CERTIFICATE IS SUBJECT TO ALL OF 'THE TERMS, CONDITIONS, EXCLUSIONS AND DEFINITIONS IN THE POLICIES. IT IS A CONDITION PRECEDENT OF COVERAGE UNDER THE POLICIES THAT THE ADDITIONAL INSURED DOES NOT WAIVE ANY STATUTORY OR COMMON LAW IMMUNITY CONFERRED UPON IT.

In 2008, National provided a subsequent amendment to the policy as Endorsement No. 10, which incorporated the Certificate of Liability Insurance into the policy. The relevant language of Endorsement No. 10 is as follows:

It is agreed that provisions of the Certificate of Liability Insurance issued to each West Virginia Political Subdivision ... are incorporated into this policy.

The circuit court found that the quoted policy language was conspicuous, plain, and clear and that it preserved the immunity afforded the City of Elkins, Mr. Stanton, and National. We agree.

In arguing that the immunity was not preserved, the Plaintiffs cite to and quote only the Certificate of Liability Insurance. From this narrow view, the Plaintiffs argue that the "immunity preservation contained therein does not appear in the policy verbiage." The Plaintiffs go further and contend that be-

cause the immunity language in the Certificate of Liability Insurance does not appear in the policy, there exists "ambiguity and conflict between the Certificate and the Policy."

We categorically reject the Plaintiffs' partial view of the evidence on this issue. The Plaintiffs' entire argument is founded upon a complete lack of recognition of Endorsement No. 10. The Plaintiffs have not even attempted to argue that Endorsement No. 10 is somehow flawed. The Plaintiffs have simply ignored it. See W. Va.Code § 33–6–30(a) (2002) (Repl.Vol.2011) ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended or modified by any rider, endorsement or application attached to and made a part of the policy."). It is clear to this Court that the Plaintiffs have ignored Endorsement No. 10 because it completely undermines their attack on the policy. Endorsement No. 10 makes clear, as found by the circuit court, that the immunity preservation found in the Certificate of Liability Insurance is part of the policy.[13]

The Plaintiffs have argued that the per curiam opinion in Bender v. Glendenning, 219 W.Va. 174, 632 S.E.2d 330 (2006), somehow changed our law as to what is sufficient to show that a policy has preserved an insured's immunity. We disagree.

To begin, we have indicated that "if rules of law or accepted ways of doing things are to be changed, then this Court will do so in a signed opinion, not a per curiam opinion." Lieving v. Hadley, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992), overruled on other grounds by Walker v. Doe, 210 W.Va. 490, 558 S.E.2d 290 (2001). Thus, as a fundamental matter, this Court did not change or alter any law in Bender. Next, the decision in Bender has no substantive relevancy to the facts of this case. Bender was a declaratory judgment action filed by an insurer seeking to determine whether it had a duty to defend a political subdivision employee against a claim for intentional sexual misconduct. To resolve the issue, this Court narrowly focused upon whether the coverage provided by the policy for "wrongful act" conduct extended to intentional sexual misconduct. We found that the coverage existed under the definition of "wrongful act" provided in the policy. We noted further in Bender that only one provision of the policy might have excluded coverage. That provision sought to exclude all coverages that were not allowed by statute. This Court found that the provision was not "sufficiently 'conspicuous, plain, and clear' so as to clearly identify the precise limitation of liability it is intended

---

13. The Plaintiffs also have contended that they should have been allowed to conduct discovery to determine whether the City of Elkins exercised free will and volition in agreeing to the preservation of immunity provision. The Plaintiffs contend that the decision in Gibson v. Northfield Insurance Co., 219 W.Va. 40, 631 S.E.2d 598 (2005), permits such an inquiry. The Plaintiffs' have misconstrued Gibson. The decision in Gibson addressed the issue of a policy incorporating limiting terms and conditions that violate W. Va.Code § 33–6–31. Gibson held in Syllabus point 5:

An insurance company may incorporate limiting terms and conditions that violate W. Va. Code, 33–6–31 into a governmental entity's insurance policy. However, to be permissible under W. Va.Code, 29–12A–16(a) [2003], the limiting terms and conditions in the insurance policy must clearly be "determined by the political subdivision in its discretion." The limiting terms and conditions must therefore be the result of some choice, judgment, volition, wish or inclination as a result of investigation or reasoning by the governmental entity. The terms and conditions are not enforceable

merely because they are different from those found in the typical insurance policy. To the extent that Trent v. Cook, 198 W.Va. 601, 482 S.E.2d 218 (1996) says otherwise, it is modified.

219 W.Va. 40, 631 S.E.2d 598. Gibson only authorizes discovery on the issue of a policy provision that violates a statute. A policy provision that merely preserves immunity does not violate any statute. Further, assuming for the sake of argument that the issue raised was a valid Gibson inquiry, we would still reject it. The record in this case does not show that the Plaintiffs filed a Rule 56(f) motion to stay a ruling on summary judgment because of a need to conduct discovery. See Syl. pt. 3, in part, Crain v. Lightner, 178 W.Va. 765, 364 S.E.2d 778 (1987) ("Where a party is unable to resist a motion for summary judgment because of an inadequate opportunity to conduct discovery, that party should file an affidavit pursuant to W. Va. R. Civ. P. 56(f) and obtain a ruling thereon by the trial court."). Morever, as pointed out by the defendants, the Plaintiffs moved for summary judgment on the very issue they now argue warranted discovery.

to impart." *Bender,* 219 W.Va. at 182, 632 S.E.2d at 338.[14]

In sum, there is nothing remotely set out in *Bender* that changed the principles we use in reviewing the language of a policy, nor does the decision have any substantive relevancy to the issue of whether National's policy adequately preserved the immunity that is at issue here.

### B. Uninsured Motorist Coverage Is Triggered When a Tortfeasor Has Immunity

As a result of the immunity granted to the City of Elkins and Mr. Stanton, the trial court determined that the Plaintiffs' claims were sought from an accident involving an uninsured motorist. Bombardier has argued that the trial court committed error in holding that a tortfeasor's immunity can trigger uninsured motorist coverage. This is an issue of first impression for this Court.

We begin our analysis by examining the relevant statute. It is provided under W. Va.Code § 33–6–31(c) (1998) (Repl.Vol.2011) that "the term 'uninsured motor vehicle' shall mean a motor vehicle as to which there is no: (I) Bodily injury liability insurance and property damage liability insurance[.]" We do not find any ambiguity in this definition, as it relates to the issue presented. "[A]ccording to the established rules of construction, the intention must be collected from the words used when they are free from ambiguity." *Wheeling Gas Co. v. City of Wheeling,* 5 W.Va. 448, 462 (1872). *See Mingo County Redevelopment Auth. v. Green,* 207 W.Va. 486, 490, 534 S.E.2d 40, 44 (2000) ("[W]e have a duty to apply the statute as written when its terms are not ambiguous."). We believe the definition of uninsured motor vehicle under W. Va.Code § 33–6–31(c) is broad enough to encompass a tortfeasor who is immune from liability.

The definition of uninsured motor vehicle provided by W. Va.Code § 33–6–31(c) requires only that a vehicle not have personal injury and property liability coverage. This statute does not say that a person must fail to purchase personal injury and property liability coverage in order for a vehicle to be considered uninsured. However, this is the limitation that Bombardier seeks. Bombardier "essentially asks this court to insert words into an otherwise unambiguous statute, something we are loath to do." *Schmehl v. Helton,* 222 W.Va. 98, 105, 662 S.E.2d 697, 704 (2008). "We are not at liberty to insert words or qualifications into a statute to make it conform to our notions of what it ought to be, for this would be legislating." *Wheeling Gas,* 5 W.Va. at 462. In the instant case there is no personal injury and property liability coverage because the City of Elkins and Mr. Stanton are immune from liability. Immunity from liability is no different than failure to purchase liability insurance for purposes of W. Va.Code § 33–6–31(c).

As a result of the plain language of our statute, we now hold that, under the definition of uninsured motor vehicle contained in W. Va.Code § 33–6–31(c) (1998) (Repl.Vol.2011), uninsured motor vehicle coverage is triggered when a person sustains an automobile injury or loss that is caused by a tortfeasor who is immune from liability. *See Borjas v. State Farm Mut. Auto. Ins. Co.,* 33 P.3d 1265 (Colo.App.2001) (insured was entitled to uninsured motorist benefits because police officer was immune from liability under the Governmental Immunity Act); *Georgia Farm Bureau Mut. Ins. Co. v. Williams,* 266 Ga.App. 540, 597 S.E.2d 430 (2004) (uninsured motorist coverage is available where it is impossible for the plaintiff to obtain a judgment against an insured motorist for reasons unrelated to the facts of the accident); *Daniels v. Hetrick,* 164 N.C.App. 197, 595 S.E.2d 700, 702 (2004) ("In cases where

---

14. The brief of Westfield also joined the Plaintiffs in arguing against immunity under National's policy. Westfield went further, however, to argue that if immunity is found, National should still be required to pay up to $20,000 as provided for under the minimum financial responsibility requirements of W. Va.Code § 17D–4–12(b)(2). The circuit court rejected this argument on the grounds that "to accept Westfield's argument, the concept of immunity in W. Va.Code § 29–12A–5(a)(11) would be undermined." We agree with the circuit court and therefore find no merit to Westfield's contention. It is for the Legislature to determine if an exception to the immunity provided by W. Va.Code § 29–12A–5(a)(11) is to be imposed via the minimum financial responsibility requirements of W. Va.Code § 17D–4–12(b)(2).

the alleged tortfeasor is dismissed from the action based upon governmental immunity it is appropriate for the plaintiff to proceed against her own uninsured motorist's coverage."); *Barfield v. Barfield*, 742 P.2d 1107, 1113 (Okla.1987) ("It would be manifestly unjust to permit the insurer to avoid its contractual duty, ... by its assertion of entitlement to third party tort immunity[.]"). Insofar as we have determined that the City of Elkins and Mr. Stanton were immune from liability, we must affirm the trial court's ruling that the immunity triggered the uninsured motorist coverage provisions of the applicable policies.

### C. The Meaning of Legally Entitled to Recover

■ Although we have determined that immunity triggered the uninsured motorist coverage provisions of the applicable policies, the issue of the Plaintiffs' entitlement to that coverage is not completely resolved. As a cross assignment of error, Bombardier has argued that if the Plaintiffs are not entitled to recover from the City of Elkins and Mr. Stanton, then they are not entitled to uninsured motorist coverage because W. Va.Code § 33–6–31(b) (1998) (Repl.Vol.2011) and its insurance policy both require a claimant be "legally entitled to recover" from the tortfeasor.[15]

We start out by setting forth the policy and statutory language that is at issue. The following pertinent language appears in W. Va.Code § 33–6–31(b):

Nor shall any such policy or contract be so issued or delivered unless it shall contain an endorsement or provisions under-

taking to pay the insured all sums which he shall be *legally entitled to recover* as damages from the owner or operator of an uninsured motor vehicle[.]

(Emphasis added). Bombardier's policy also provides:

We will pay all sums that the "insured" is *legally entitled to recover* as compensatory damages from the owner or driver of an "uninsured" ... "... motor vehicle."

(Emphasis added).

Both W. Va.Code § 33–6–31(b) and the Bombardier policy require that an insured be "legally entitled to recover" from the tortfeasor before uninsured motorist coverage is triggered.[16] Insofar as "the phrase 'legally entitled to recover' was included in the policy at issue pursuant to a statutory requirement, the intent of the legislature, rather than the intent of the parties, controls." *Vega v. Farmers Ins. Co. of Oregon*, 323 Or. 291, 918 P.2d 95, 102 (1996). *See Perkins v. Doe*, 177 W.Va. 84, 87, 350 S.E.2d 711, 714 (1986) ("A contractual endorsement cannot rise higher than the public policy of West Virginia, explicitly established through statute by the Legislature.").

The parties agree that neither the statute nor policy define the phrase "legally entitled to recover." However, the parties disagree on what meaning should be attached to the phrase. Bombardier contends that uninsured motorist coverage is not triggered because the Plaintiffs "are not 'legally entitled to recover' any damages against Stanton or the City of Elkins." The Plaintiffs contend that the uninsured motorist coverage is trig-

---

**15.** The brief of Westfield addresses this issue in two sentences in the context of the language in W. Va.Code § 33–6–31(b), not its actual policy. We find the terse nature of Westfield's purported cross assignment of error to be insufficient to be preserved for appellate review. *See Sale ex rel. Sale v. Goldman*, 208 W.Va. 186, 199–200 n. 22, 539 S.E.2d 446, 459–60 n. 22 (2000) (deeming assignment of error that "is terse and lacks any authority to support it" to have been waived); *Tiernan v. Charleston Area Med. Ctr., Inc.*, 203 W.Va. 135, 140 n. 10, 506 S.E.2d 578, 583 n. 10 (1998) ("Issues ... merely mentioned in passing are deemed waived."); *State v. Lilly*, 194 W.Va. 595, 605 n. 16, 461 S.E.2d 101, 111 n. 16 (1995) ("[C]asual mention of an issue in a brief is cursory treatment insufficient to preserve the issue on

appeal." (internal quotations and citation omitted)).

**16.** It should be noted that "W. Va.Code § 33–6–31(b) (1998) addresses both uninsured and underinsured motorist coverage." Syl. pt. 3, *Jewell v. Ford*, 214 W.Va. 511, 590 S.E.2d 704 (2003). However, our discussion is limited to uninsured coverage because that is the only coverage issue that is applicable in this case. "We note [also] that uninsured motorist coverage is required by state law, whereas underinsured motorist coverage is optional and not legally required." *Imgrund v. Yarborough*, 199 W.Va. 187, 193, 483 S.E.2d 533, 539 (1997).

gered because, in order to be legally entitled to recover, all they have to do is demonstrate that Mr. Stanton was at fault in causing the accident and the extent of the damages they suffered.

 The lack of a statutory or policy definition for the phrase "legally entitled to recover," and the parties' conflicting interpretation of the same, suggest to this Court that the phrase is sufficiently ambiguous.[17] *See Vega*, 918 P.2d at 102 ("The ['legally entitled to recover'] provision can be read to require coverage only when the insured is or would be able to obtain a judgment in his or her favor, *i.e.*, prove the requisite elements of a tort claim and overcome available defenses. At the same time, it also can be read as conveying a more liberal test of coverage, requiring only that the insured be able to prove the basic elements of a tort claim-fault and damages."). We note that "[j]udicial interpretation of a statute is warranted only if the statute is ambiguous . . . ." Syl. pt. 1, in part, *Ohio Cnty. Comm'n v. Manchin*, 171 W.Va. 552, 301 S.E.2d 183 (1983). "A statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W.Va. 693, 414 S.E.2d 454 (1992). This is to say that " '[a] statute is open to construction only where the language used requires interpretation because of ambiguity which renders it susceptible of two or more constructions or of such doubtful or obscure meaning that reasonable minds might be uncertain or disagree as to its meaning.' " *Mace v. Mylan Pharms., Inc.*, 227 W.Va. 666, 673, 714 S.E.2d 223, 230 (2011) (quoting *Hereford v. Meek*, 132 W.Va. 373, 386, 52 S.E.2d 740, 747 (1949)). *See* Syl. pt. 1, *Prete v. Merchants Prop. Ins. Co.*, 159 W.Va. 508, 223 S.E.2d 441 (1976) ("Whenever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous.").

We must begin our analysis by distinguishing a case, *Wisman v. William J. Rhodes & Shamblin Stone, Inc.*, 191 W.Va. 542, 447

S.E.2d 5 (1994), that the parties failed to present. In *Wisman*, the plaintiff was injured while driving his employer's truck. The injury occurred when a co-employee ran into the plaintiff with another truck owned by their mutual employer. The employer insured the trucks with different insurers. Even though the plaintiff received workers' compensation, he sued the insurer of the truck he was driving, his co-employee, and employer. The insurer argued that the plaintiff could not recover uninsured benefits because he was not legally entitled to recover damages from his co-employee and employer as a result of workers' compensation immunity. The circuit court certified the following question to this Court:

> May the plaintiff, who is precluded by grants of immunity contained in the Workers' Compensation Act, W. Va.Code 23–2–6 and 6a from securing a judgment against defendants Shamblin Stone or Rhodes, nonetheless assert a claim under the uninsured or underinsured motorist provisions contained in the insurance policy issued by defendant Continental, pursuant to W. Va. Code 33–6–31, covering the vehicle plaintiff was driving at the time of the accident?

*Wisman*, 191 W.Va. at 543, 447 S.E.2d at 6.

Prior to answering the certified question in *Wisman*, this Court discussed a similar issue that was presented to the Virginia Supreme Court in *Aetna Casualty & Surety Co. v. Dodson*, 235 Va. 346, 367 S.E.2d 505 (1988). The decision in *Dodson* held that the plaintiff's estate could not recover uninsured motorist benefits because workers' compensation afforded the exclusive remedy against the decedent's employer and fellow employee. Based upon the reasoning in *Dodson*, we held in Syllabus point 2 of *Wisman*:

> An employee who receives workers' compensation benefits for injuries that result from a motor vehicle collision with a co-employee which occurs within the course and scope of employment is not entitled to assert a claim for uninsured or underinsured motorist benefits. Because of the provisions for employer and co-

---

**17.** Of course, "[t]he fact that parties disagree about the meaning of a statute does not itself create ambiguity or obscure meaning." *See T.*

*Weston, Inc. v. Mineral Cnty.*, 219 W.Va. 564, 568, 638 S.E.2d 167, 171 (2006).

employee immunity contained in W. Va. Code §§ 23–2–6 and 6a (1994), workers' compensation is the exclusive remedy available to an injured employee, and an uninsured or underinsured motorist carrier has no liability.

191 W.Va. 542, 447 S.E.2d 5.

The decision in *Wisman* is distinguishable for the reasons cited by this Court in *Henry v. Benyo*, 203 W.Va. 172, 506 S.E.2d 615 (1998). In *Benyo* we stated that "the scope of the *Wisman* decision is limited to those motor vehicle accidents involving two employees. *Wisman* does not discuss the situation here at hand regarding motor vehicle accidents between an employee and a third-party nonemployee." *Benyo*, 203 W.Va. at 176, 506 S.E.2d at 619. We would also note that the holding in *Wisman* was not based upon the phrase "legally entitled to recover" as set out under W. Va.Code § 33–6–31(b). *Wisman* never mentioned the statute.

Insofar as the Legislature has not explicitly set out its intent in using the phrase "legally entitled to recover," it is prudent to examine how other jurisdictions have construed the phrase. The parties have pointed out that there is a split of authority on the meaning that should be attached to the phrase. Our research indicates that a slight majority of courts that have considered the issue have determined that the phrase "legally entitled to recover," or its equivalent, means that an insured is entitled to uninsured motorist coverage merely by establishing fault on the part of the tortfeasor and the amount of the insured's damages; the tortfeasor's immunity, for whatever reason, does not prevent coverage. *See Hettel v. Rye*, 251 Ark. 868, 475 S.W.2d 536 (1972); *Borjas v. State Farm Mut. Auto. Ins. Co.*, 33 P.3d 1265 (Colo.App.2001); *Tinsley v. Worldwide Ins. Co.*, 212 Ga.App. 809, 442 S.E.2d 877 (1994); *Allstate Ins. Co. v. Elkins*, 63 Ill.App.3d 62, 21 Ill.Dec. 66, 381 N.E.2d 1 (1978); *Allied Fid. Ins. Co. v. Lamb*, 361 N.E.2d 174 (Ind. Ct.App.1977); *Speer v. Farm Bureau Mut. Ins. Co., Inc.*, 43 Kan.App.2d 520, 226 P.3d 558 (2010) (involved underinsured coverage); *U.S. Fid. & Guar. Co. v. Preston*, 26 S.W.3d 145 (Ky.2000); *West American Ins. Co. v. Popa*, 352 Md. 455, 723 A.2d 1 (1998); *Reese v. Preferred Risk Mut. Ins. Co.*, 457 S.W.2d 205 (Mo.Ct.App.1970); *Pemberton v. Farmers Ins. Exch.*, 109 Nev. 789, 858 P.2d 380 (1993); *Boradiansky v. State Farm Mut. Auto. Ins. Co.*, 141 N.M. 387, 156 P.3d 25 (2007); *Deluca v. Motor Vehicle Accident Indemnification Corp.*, 17 N.Y.2d 76, 268 N.Y.S.2d 289, 215 N.E.2d 482 (1966); *Williams v. Holsclaw*, 128 N.C.App. 205, 495 S.E.2d 166 (1998); *Torres v. Kansas City Fire & Marine Ins. Co.*, 849 P.2d 407 (Okla. 1993); *Sahloff v. Western Cas. & Sur. Co.*, 45 Wis.2d 60, 171 N.W.2d 914 (1969).

A leading case that illustrates the majority interpretation of the phrase "legally entitled to recover" is *Borjas v. State Farm Mutual Automobile Insurance Co.*, 33 P.3d 1265 (Colo.App.2001). In *Borjas*, the plaintiff was injured when a police car crashed into the vehicle she was driving. The plaintiff filed an action against the police officer and his employer, the City of Alamosa. The action was dismissed on the grounds that the defendants were entitled to immunity under the laws of Colorado. Thereafter, the plaintiff filed an action against her automobile insurance carrier to recover under the uninsured motorist provision of her insurance policy. The trial court dismissed the action on the grounds that coverage was not provided because the police officer and the city were immune from liability, and, therefore, the plaintiff was not legally entitled to recover damages from them. The plaintiff appealed. One of the issues the plaintiff raised on appeal was that the trial court committed error in finding that the uninsured motorist policy was not triggered because she was not legally entitled to recover from the tortfeasor as required by the policy and the state's uninsured motorist statute. The appellate court agreed with the plaintiff as follows:

> State Farm argues that plaintiff is not "legally entitled to recover damages" from a tortfeasor who is immune from liability ... and therefore, [the uninsured statute] does not require coverage. The question whether [the uninsured statute] requires coverage when an injured motorist cannot collect damages from a negligent motorist because the tortfeasor is immune from liability ... is an issue of first impression in

Colorado. We conclude that the interpretation of the statute urged by State Farm would be inconsistent with the public policy expressed therein.

UM insurance coverage has been found in other situations where the innocent driver was not "legally entitled to recover damages." ... [A] division of this court [has] held that UM insurance coverage was required by the statute when the identity of a negligent hit-and-run driver could not be ascertained. Clearly, the innocent driver was not "legally entitled to recover damages" when he or she could not serve process on the unidentified tortfeasor.

Nor does bankruptcy of the tortfeasor preclude UM insurance coverage, even though the innocent driver could not legally recover damages from the bankrupt driver....

The courts that have held that UM coverage was mandated where the tortfeasor is protected by some form of governmental immunity have all found that interpretation consistent with the purposes of their UM statutes, *i.e.,* to provide that motorists may purchase insurance to protect themselves from negligent motorists who cannot or will not pay for the damages they have caused....

Accordingly, we conclude that the phrase "legally entitled to recover damages," as used in [the statute], means that the insured must be able to establish that the fault of the uninsured motorist gave rise to damages and the extent of those damages. We further conclude that the public policy expressed in [the statute] requires that UM insurance policies must provide coverage for the protection of a motorist injured by the negligence of a driver who is immune from liability[.]

*Borjas,* 33 P.3d at 1268–69 (citations omitted).

A leading commentary on uninsured coverage also supports the majority position on this issue as follows:

[T]he existence of a tort immunity or other limitation on the insured's rights against the tortfeasor should not preclude claims under the uninsured motorist coverage on the ground that the insured would not be legally entitled to recover from the tortfeasor.

First, the immunity only absolves the defendant from liability. Since the uninsured motorist insurance company has no relation to the tortfeasor and allowing an insured to recover uninsured motorist insurance benefits does not adversely affect any interest of the tortfeasor which the tort immunity protects, the tort immunity should have no effect on whether an insurance company providing first party, uninsured motorist insurance coverage for an individual is obligated to indemnify the insured.

Second, ... [t]he problem should be adjudicated by balancing the public policy interests. The uninsured motorist insurance statutes ... reflect a strong public policy in favor of providing indemnification for persons who are injured by uninsured motorists. Whether the tortfeasor is immune from litigation is, therefore, usually a matter of relatively small importance in regard to the indemnification of an insured person by an insurer.... The important fact is that no compensation is available from the negligent tortfeasor.

Alan I. Widiss and Jeffrey E. Thomas, *Uninsured and Underinsured Motorist Insurance,* § 7.14, at 532 (2005).

Unlike the majority view, a minority of courts take the position "that where there is no underlying uninsured ... person from whom the plaintiff is legally entitled to recover, due to the immunity provision of [a statute], the plaintiff's [uninsured] insurer is not legally liable to him." *Hebert v. Clarendon American Ins. Co.,* 984 So.2d 952, 956 (La.Ct. App.2008). *See Ex parte Carlton,* 867 So.2d 332 (Ala.2003); *Allstate Ins. Co. v. Boynton,* 486 So.2d 552 (Fla.1986); *Otterberg v. Farm Bureau Mut. Ins. Co.,* 696 N.W.2d 24 (Iowa 2005); *Steen v. Metropolitan Prop. & Cas. Ins. Co.,* 858 So.2d 186 (Miss.Ct.App.2003); *Kesterson v. Wallut,* 157 S.W.3d 675 (Mo.Ct. App.2004); *Matarese v. New Hampshire Mun. Ass'n Prop. Liab. Ins. Trust, Inc.,* 147 N.H. 396, 791 A.2d 175 (2002); *Gabriel v. Minnesota Mut. Fire & Cas.,* 506 N.W.2d 73 (N.D.1993); *Snyder v. American Family Ins. Co.,* 114 Ohio St.3d 239, 871 N.E.2d 574

(2007); *Vega v. Farmers Ins. Co. of Oregon*, 323 Or. 291, 918 P.2d 95 (1996); *Petrochko v. Nationwide Mut. Ins. Co.*, No. 07 CV 7113, 2010 WL 5571396 (Pa.Ct.Com.Pl. Aug. 27, 2010) (involved underinsured coverage); *Welch v. Miller & Long Co. of Maryland, Inc.*, 258 Va. 447, 521 S.E.2d 767 (1999); *Romanick v. Aetna Cas. & Sur. Co.*, 59 Wash.App. 53, 795 P.2d 728 (1990). We have considered the reasoning of the courts in each of the minority decisions. We find those decisions to be inconsistent with the public policy behind our uninsured motorist statute.

We previously have noted that "the preeminent public policy of this state in uninsured ... motorist cases is that the injured person be *fully compensated* for his or her *damages* not compensated by a negligent tortfeasor, up to the limits of the uninsured ... motorist coverage." *State Auto. Mut. Ins. Co. v. Youler*, 183 W.Va. 556, 564, 396 S.E.2d 737, 745 (1990) (emphasis in original). The strong public policy underlying uninsured motorist coverage demands that the phrase "legally entitled to recover," contained in W. Va.Code § 33–6–31(b), be given a liberal interpretation that is consistent with affording coverage for insureds.

■ In view of the foregoing, we adopt the majority rule and hold that the phrase "legally entitled to recover" contained in the uninsured motorist statute, W. Va.Code § 33–6–31(b) (1998) (Repl.Vol.2011), is construed to mean that an insured is entitled to uninsured coverage merely by establishing fault on the part of the tortfeasor and the amount of the insured's damages. Under this definition, the fact that a tortfeasor is immune from liability will not preclude recovery of uninsured motorist benefits.

As a result of our holding, we reject Bombardier's cross assignment of error that since the Plaintiffs are not entitled to recover from the City of Elkins and Mr. Stanton, then the statutory and policy phrase "legally entitled

to recover" prevents them from obtaining uninsured motorist coverage.

### D. Government Owned Vehicle Policy Exclusion

■ The Plaintiffs additionally argue that the circuit court committed error in holding that the "government owned vehicle" exclusion, found in Bombardier's policy and the policy issued by Westfield, were enforceable above the mandatory limits of uninsured motorist coverage required by W. Va.Code § 33–6–31 (1998) (Repl.Vol.2011).[18] We begin addressing this issue by setting out the pertinent language from both policies.[19] The Bombardier policy provides:

> However, "uninsured motor vehicle" ... does not include any vehicle ... owned by a governmental unit or agency.

The policy issued by Westfield provides the following:

> However, "uninsured motor vehicle" does not include any vehicle ... [o]wned by any governmental unit or agency, but not limited to ... the State of West Virginia or any of its political subdivisions or agencies.

It is clear that the "governmental owned vehicle" exclusion found in both policies is not ambiguous and plainly denies uninsured motorist coverage when an accident involves a government owned vehicle. We have held that " '[w]here provisions in an insurance policy are plain and unambiguous and where such provisions are not contrary to a statute, regulation, or public policy, the provisions will be applied and not construed.' " *Witt v. Sutton*, 229 W.Va. 26, 30, 725 S.E.2d 195, 199 (2011) (quoting Syl., *Tynes v. Supreme Life Ins. Co. of America*, 158 W.Va. 188, 209 S.E.2d 567 (1974)).

Westfield relies upon our decision in *Deel v. Sweeney*, 181 W.Va. 460, 383 S.E.2d 92 (1989), to argue that we should uphold the government owned vehicle exclusion because

---

**18.** This ruling meant that Bombardier and Westfield would each be liable to the Plaintiffs for up to $20,000.

**19.** Bombardier and Westfield have argued, as cross assignments of error, that the trial court committed error in holding that they could be

held liable for the limits of uninsured motorist coverage required by W. Va.Code § 33–6–31. Because of our resolution of the primary issue, the government vehicle exclusion, the minimum coverage issue raised by Bombardier and Westfield is moot.

"[i]nsurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes." Syl. pt. 3, *Deel, id.* Westfield also contends that the policy provisions at issue in this case should be upheld because they were approved by the Insurance Commissioner.[20] Finally, Westfield asserts that no language in the uninsured motorist statute expressly precludes the government owned vehicle exclusion.

Bombardier's brief also has cited to Syllabus point 3 of *Deel* to support its argument that nothing precluded the insertion of the exclusion in its policy. It is also argued by Bombardier that, because of this Court's decision in *Boniey v. Kuchinski,* 223 W.Va. 486, 677 S.E.2d 922 (2009), the exclusion does not violate public policy. The decision in *Boniey* has no application to the instant case.[21]

The issue we are being asked to decide, whether a government owned vehicle exclusion violates the public policy of this State, is an issue of first impression for this Court. Accordingly, we will look for guidance to other jurisdictions that have addressed the matter.

We begin by noting that the circuit court only enforced the government owned vehicle exclusion for amounts above the statutory uninsured minimum required coverage. This situation was squarely presented in *Transportation Insurance Co. v. Martinez,* 183 Ariz. 33, 899 P.2d 194 (Ct.App.1995). The insurer in *Martinez* filed a declaratory judgment action to determine whether an uninsured exclusion in its policy was enforceable. Under that exclusion, the policy did not provide uninsured motorist coverage in excess of the statutory minimum for an accident in which the insured was injured by a motorist operating a government owned vehicle. The trial court held that the exclusion was unenforceable. The appellate court agreed as follows:

Arizona's uninsured motorist statute establishes a public policy that every insured is entitled to recover damages he or she would have been able to recover if the uninsured had maintained a policy of liability insurance in a solvent company. The purpose of the statute is to protect victims of financially irresponsible drivers. We liberally construe the statute to carry out the intent of the legislature....

[W]e conclude that the operator of a government-owned vehicle exclusion ... constitutes an impermissible whittling away of legislatively required UM coverage. The fact that [the insurer] did not entirely exclude the coverage but instead

---

20. *See Perkins v. Doe,* 177 W.Va. 84, 87, 350 S.E.2d 711, 714 (1986) ("The Insurance Commission, of course, does not have the authority to modify the applicable law through its approval of endorsement forms.").

21. The decision in *Boniey* raised the question of whether an insurance policy could exclude uninsured motorist coverage for an all-terrain vehicle (hereinafter "ATV"). This Court held that such an exclusion was valid. We did so because W. Va.Code § 17A–3–2(a)(6) (2010) (Supp.2012) exempted ATVs from the requirements of annual registration, license plates, and fees. This Court held in Syllabus point 7 of *Boniey:*

A motor vehicle that is not required to be registered and licensed pursuant to W. Va. Code §§ 17A–3–1, *et seq.* is excepted from the mandatory security provisions in the Motor Vehicle Safety Responsibility Law including motor vehicle liability coverage mandated by W. Va.Code § 17D–4–2.

223 W.Va. 486, 677 S.E.2d 922.

Bombardier seeks to extend *Boniey* by arguing that the government owned vehicle exclusion does not violate public policy because federal government vehicles are exempted from registration under state law, and federal and state vehicles are exempt from paying registration fees under state law. *See* W. Va.Code § 17A–3–2(a)(4) (2010) (Supp.2012); W. Va.Code § 17A–10–8(1) (2007) (Repl.Vol.2009). Although the state Legislature has affirmatively exempted federal and state vehicles from certain revenue generating requirements, Bombardier has not cited to any affirmative legislation authorizing insurers to deny uninsured motorist coverage for accidents involving government owned vehicles. In the final analysis, whether or not federal and state vehicles are exempt from registration and licensing fees has no bearing on whether an insurance policy's exclusion of uninsured motorist coverage for a government owned vehicle violates the public policy of this State. The ruling in *Boniey* did not address the latter issue, nor does its narrow fact pattern implicate the issue in this case.

limited it to the statutory minimum does not save the provision....

We can think of no valid reason for this "operator" exclusion that overcomes the public policy rationale of the UM statute.... No logical reason appears to limit ... recovery ... merely because [the tortfeasor] was driving a government vehicle. The provision limiting UM coverage when the insured may legally recover from the operator of a government-owned vehicle is inescapably void.

*Martinez*, 899 P.2d at 196–98 (internal quotations and citations omitted).

The ruling in *Martinez* to invalidate the government owned vehicle exclusion is consistent with the majority position in the nation. That is, "the majority of courts in other jurisdictions that have considered the validity of exclusions for government-owned vehicles have found them to be void and unenforceable as contrary to their respective [uninsured] insurance laws." *Borjas v. State Farm Mut. Auto. Ins. Co.*, 33 P.3d 1265, 1270 (Colo.App.2001). *See Carter v. Saint Paul Fire & Marine Ins. Co.*, 283 F.Supp. 384 (D.C.Ark.1968); *Higgins v. Nationwide Mutual Ins. Co.*, 291 Ala. 462, 282 So.2d 301 (1973); *Cropper v. State Farm Mut. Auto. Ins. Co.*, 671 A.2d 423 (Del.Super.Ct.1995); *United Servs. Auto. Ass'n v. Phillips*, 740 So.2d 1205 (Fla.Dist.Ct.App.1999); *Franey v. State Farm Mut. Auto. Ins. Co.*, 5 Ill.App.3d 1040, 285 N.E.2d 151 (1972); *Cincinnati Ins. Co. v. Trosky*, 918 N.E.2d 1 (Ind.Ct.App. 2009) (involved underinsured coverage); *Hillhouse v. Farmers Ins. Co.*, 226 Kan. 68, 595 P.2d 1102 (1979); *Nationwide Mut. Ins. Co. v. Hatfield*, 122 S.W.3d 36 (Ky.2003) (involved underinsured coverage); *Mednick v. State Farm Mut. Auto. Ins. Co.*, 31 So.3d 1133 (La.Ct.App.2010); *Young v. Greater Portland Transit Dist.*, 535 A.2d 417 (Me. 1987); *West American Ins. Co. v. Popa*, 352 Md. 455, 723 A.2d 1 (1998); *Massachusetts Insurers Insolvency Fund v. Premier Ins. Co.*, 449 Mass. 422, 869 N.E.2d 576, 583 (2007); *Ronning v. Citizens Sec. Mut. Ins. Co.*, 557 N.W.2d 363 (Minn.Ct.App.1996) (involved underinsured coverage); *Welch v. Automobile Club Inter-Insurance Exch.*, 948 S.W.2d 718 (Mo.Ct.App.1997); *Bartell v.*

*American Home Assur. Co.*, 310 Mont. 276, 49 P.3d 623 (2002); *Boradiansky v. State Farm Mut. Auto. Ins. Co.*, 141 N.M. 387, 156 P.3d 25 (2007); *Gabriel v. Minnesota Mut. Fire & Cas.*, 506 N.W.2d 73 (N.D.1993) (involved underinsured coverage); *Jennings v. Dayton*, 114 Ohio App.3d 144, 682 N.E.2d 1070 (1996); *State Farm Auto. Ins. Co. v. Greer*, 777 P.2d 941 (Okla.1989); *Kmonk-Sullivan v. State Farm Mut. Auto. Ins. Co.*, 746 A.2d 1118 (Pa.Super.Ct.1999); *Rueschemeyer v. Liberty Mut. Ins. Co.*, 673 A.2d 448 (R.I.1996); *Kyrkos v. State Farm Mut. Auto. Ins. Co.*, 121 Wash.2d 669, 852 P.2d 1078 (1993) (involved underinsured coverage); These courts have reasoned "that the exclusion of government owned vehicles from uninsured ... motorist coverage thwarts the expressed public policy of the statute setting forth the purpose of such coverage, namely to protect those innocent insureds who are harmed by an uninsured ... tortfeasor." *Mednick v. State Farm Mut. Auto. Ins. Co.*, 31 So.3d 1133, 1137 (La.Ct.App.2010). The court in *Rueschemeyer v. Liberty Mutual Insurance Co.*, 673 A.2d 448 (R.I.1996), rejected the government owned vehicle exclusion using the following reasoning:

We are of the opinion that to exclude from the definition of uninsured-motor vehicles those motor vehicles owned by a governmental entity does not further the legislative intent of the uninsured-motorist statute. An insured is as susceptible of economic loss resulting from the operation of a vehicle owned and operated by a governmental entity as he or she is from the operation of a vehicle owned by another; hence, we are persuaded that to carve out an exception from the definition of uninsured-motor vehicles is contrary to the legislative intent of the statute. This exclusion impermissibly restricts coverage afforded by the statute.

*Rueschemeyer*, 673 A.2d at 451. The minority of jurisdictions that have upheld the government owned vehicle exclusion have done so because either their statute or regulations affirmatively authorized the exclusion. *See Giglio v. American Econ. Ins. Co.*, 278 Conn. 794, 900 A.2d 27 (2006); *Continental Western Ins. Co. v. Conn*, 262 Neb. 147, 629 N.W.2d 494 (2001); *Norcia v. Liberty Mut. Ins. Co.*,

297 N.J.Super. 563, 688 A.2d 679 (Law Div. 1996); *Jones v. Southern Farm Bureau Cas. Co.,* 251 S.C. 446, 163 S.E.2d 306 (1968);[22] *Hempy v. City of Chattanooga Parks & Recreation,* No. 03A01–9412–CV–00435, 1995 WL 309986 (Tenn.Ct.App. May 22, 1995); *Francis v. International Serv. Ins. Co.,* 546 S.W.2d 57 (Tex.1976).

In determining whether a government owned vehicle exclusion violates the public policy of this State, we must ascertain the legislative intent underlying the uninsured motorist coverage statute. This Court has held that "[i]n construing any insurance policy, it is appropriate to begin by considering whether the policy language is in accord with West Virginia law. The terms of the policy should be construed in light of the language, purpose and intent of the applicable statute." *Adkins v. Meador,* 201 W.Va. 148, 153, 494 S.E.2d 915, 920 (1997).

■ It is provided under W. Va.Code § 33–6–31(b) that every automobile policy "shall contain an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle[.]" This Court repeatedly has recognized that W. Va.Code § 33–6–31(b) "is remedial in nature and, therefore, must be construed liberally in order to effect its purpose." Syl. pt. 7, in part, *Perkins v. Doe,* 177 W.Va. 84, 350 S.E.2d 711 (1986). As we observed in *State Automobile Mutual Insurance Co. v. Youler,* 183 W.Va. 556, 396 S.E.2d 737 (1990):

> [T]he legislature has articulated a public policy of full indemnification or compensation underlying . . . uninsured . . . motorist coverage in the State of West Virginia. That is, the preeminent public policy of this state in uninsured . . . motorist cases is that the injured person be *fully compensated* for his or her *damages* not compensated by a negligent tortfeasor, up to the limits of the uninsured . . . motorist coverage.

*Youler,* 183 W.Va. at 564, 396 S.E.2d at 745 (emphasis in original).

■ We have found no language in W. Va.Code § 33–6–31(b), nor in any of our motor vehicle statutes or regulations, that affirmatively permit an insurer to deny uninsured motorist coverage merely because a vehicle involved in an accident was government owned. Our cases have warned that " '[t]his Court will be vigilant in holding the insurers' feet to the fire in instances where . . . exclusions or denials of coverage strike at the heart of the purposes of the uninsured . . . motorist statutes provisions.' " *Cunningham v. Hill,* 226 W.Va. 180, 186, 698 S.E.2d 944, 950 (2010) (quoting *Deel,* 181 W.Va. at 463, 383 S.E.2d at 95). "Accordingly, if the language of [the] policy does not comply with the broad terms of [W. Va.Code § 33–6–31(b) ], then the policy language is void and the policy must be construed to contain the coverage provided for by statute." *Adkins v. Meador,* 201 W.Va. 148, 153, 494 S.E.2d 915, 920 (1997).

■ In view of the foregoing, particularly the position of the majority of courts in the country, we now hold that an uninsured motor vehicle policy exclusion for a government owned vehicle is against the public policy of this State and is therefore void and unenforceable.[23]

Based upon our holding, it is clear that the circuit court committed error by enforcing the government owned vehicle exclusions above the mandatory limits of uninsured motorist coverage.

---

**22.** *Jones* relied upon a general statute that was applicable to automobile insurance.

**23.** When we previously have found policy provisions to be contrary to public policy, this Court has not hesitated to void the same. *See, e.g., Henry v. Benyo,* 203 W.Va. 172, 506 S.E.2d 615 (1998) (workers' compensation exclusion not valid); *Hamric v. Doe,* 201 W.Va. 615, 499 S.E.2d 619 (1997) (physical contact requirement not valid); *Adkins v. Meador,* 201 W.Va. 148, 494 S.E.2d 915 (1997) (policy requirement that highway construction worker occupy vehicle in order to be insured was void); *Imgrund v. Yarborough,* 199 W.Va. 187, 483 S.E.2d 533 (1997) (finding void an exclusion attempting to preclude recovery of mandated minimum limits of uninsured motorist coverage); *Jones v. Motorists Mut. Ins. Co.,* 177 W.Va. 763, 356 S.E.2d 634 (1987) (finding named driver exclusion not valid up to the mandatory liability limits of insurance).

### E. Denial of Auto Medical Payment Benefits

█ The final issue we must address is the Plaintiffs' claim that the circuit court committed error in determining that they were not entitled to auto medical payments benefits under Bombardier's policy.[24] The circuit court based its decision on the language of an exclusion contained in the policy. The policy exclusion was set out as follows:

> This insurance does not apply to any of the following: . . .
>
> 4. "Bodily injury" to you or your "employee" arising out of and in the course of employment by you.

We do not find, nor is it argued by the Plaintiffs, that the language of this exclusion is ambiguous. Moreover, this Court has held that "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl., *Keffer v. Prudential Ins. Co.*, 153 W.Va. 813, 172 S.E.2d 714 (1970).

There is no dispute that Mr. Jenkins was injured during the course of his employment with Bombardier. Thus, under the plain meaning of the exclusion, the Plaintiffs cannot recover auto medical payment benefits under the policy. However, the Plaintiffs contend that under this Court's decision in *Henry v. Benyo*, 203 W.Va. 172, 506 S.E.2d 615 (1998), the exclusion should not apply.

In *Benyo* the plaintiff brought an action to recover underinsured motorist benefits under his employer's automobile policy, even though the plaintiff had received workers' compensation for injuries caused by a driver who was not an employee. After the trial court denied the insurer's motion for declaratory judgment that plaintiff was not entitled to underinsured motorist benefits, the insurer appealed. The issue addressed by this Court on appeal was whether an employee was entitled to underinsured motorist benefits for injuries caused by a third party tortfeasor in the course and scope of employment. We answered the question affirmatively as follows:

> An employee who receives workers' compensation benefits for injuries that result from a motor vehicle collision with a third-party which occurs within the course and scope of the employee's employment is entitled to also assert, against his/her employer's motor vehicle insurance carrier, a claim for underinsured motorist benefits, where the employee's employer has in effect motor vehicle insurance providing underinsured motorist coverage and where the employee's recovery against the third-party activates such underinsurance coverage.

Syl. pt. 4, *Benyo*, 203 W.Va. 172, 506 S.E.2d 615.

The Plaintiffs admit that our holding in *Benyo* is not directly on point with the facts of their case. However, the Plaintiffs contend that based upon principles of equity and fairness, *Benyo* should be extended to void the exclusion in the instant case. We agree.

The exclusion at issue is, for all practical purposes, a workers' compensation exclusion.[25] That is, the exclusion presumes that an employee has received workers' compensation benefits for his or her injuries, and therefore such benefits should not be duplicated through auto medical payment benefits. Although a majority of courts have upheld exclusions similar to the one under consideration in this case,[26] some courts have invalidated the exclusion "when the workers' compensation insurer successfully asserts its subrogation rights on third-party proceeds." *Rubin v. State Farm Mut. Auto. Ins. Co.*, 118 Nev. 299, 43 P.3d 1018, 1021 (2002) (holding that "the State Farm exclusion at issue does not apply with respect to workers' com-

---

**24.** We previously have indicated that the Plaintiffs have waived this issue as it relates to Westfield. *See* note 11, *supra*.

**25.** In fact, the auto medical payments exclusion in Westfield's policy, while not being addressed in this appeal, expressly characterized the exclusion as a workers' compensation exclusion.

**26.** *See generally* Job A. Sandoval, Annotation, *Insured's Receipt of or Right to Workmen's Compensation Benefits As Affecting Recovery Under Accident, Hospital, or Medical Expense Policy*, 40 A.L.R.3d 1012 (1971 & Supp.).

pensation benefits paid but ultimately reimbursed from the insured's third-party recovery"). *See, e.g., South Carolina Ins. Co. v. Arnold*, 467 So.2d 324 (Fla.Dist.Ct.App.1985) (invalidating exclusion); *Walters v. State Farm Mut. Auto. Ins. Co.*, 793 S.W.2d 217 (Mo.Ct.App.1990) (finding exclusion ambiguous). Our Legislature has provided for workers' compensation subrogation. The following is provided under W. Va.Code § 23–2A–1(b)(1) (2009) (Repl.Vol.2010):

> [I]f an injured worker ... makes a claim against the third party and recovers any sum for the claim:

> (1) [T]he private carrier or self-insured employer, whichever is applicable, shall be allowed statutory subrogation with regard to indemnity and medical benefits paid as of the date of the recovery.[27]

(Footnote added).

■ We believe that the public policy considerations that were relied upon in *Benyo* to allow an employee to recover underinsured benefits from his or her employer's automobile policy, have equal application to the recovery of medical payment benefits under such policy. That is,

> equity, fairness, and justice require that an employee, who is involved in a motor vehicle accident with a third-party during the course and scope of the employee's employment, be permitted to recover ... [auto medical] benefits under his/her employer's motor vehicle insurance policy to compensate him/her for those losses [caused] by workers' compensation [subrogation].

*Benyo*, 203 W.Va. at 179, 506 S.E.2d at 622.[28] Consequently, we now hold that an employer's insurance policy that excludes coverage for auto medical payment benefits to an employee who sustained an injury arising out of and in the course of employment is only enforceable to exclude medical payment coverage for that part of a claim that exceeds the amount subrogated by the employer's workers' compensation carrier.[29]

The record in this case is clear in establishing that Mr. Jenkins was an employee of Bombardier. There also is no dispute that Mr. Jenkins received workers' compensation benefits through Bombardier for the injuries he sustained from the accident. The policy covering Bombardier's auto medical payment benefits excluded coverage for a claim covered by workers' compensation. Under our holding, this exclusion is only enforceable above the amount subrogated by Bombardier's workers' compensation carrier.

## IV.

## CONCLUSION

In light of the forgoing, we affirm that part of the circuit court's order that granted summary judgment to Mr. Stanton, the City of Elkins, and National. We reverse that part of the circuit court's order that held the uninsured motorist policies for Bombardier and Westfield were not enforceable above the mandatory limits of uninsured motorist coverage required by W. Va.Code § 33–6–31; and we also reverse that part of the circuit court's order that denied the Plaintiffs auto medical payment benefits under Bombar-

---

**27.** It will be noted that a prior version of W. Va.Code § 23–2A–1 allowed subrogation only up to fifty percent of a plaintiff's recovery from a tortfeasor. That limitation is not set out under the current version of the statute. The current version of W. Va.Code § 23–2A–1 allows a plaintiff to negotiate the amount to provide for subrogation, and authorizes a subrogation deduction for attorney's fees and reasonable costs. *See* W. Va.Code § 23–2A–1(c) (2009) (Repl.Vol.2010).

**28.** It should be noted that W. Va.Code § 23–2A–1(e) (2009) (Repl.Vol.2010) states that "[i]t is the duty of the injured worker ... or his or her attorney to give reasonable notice to the Insurance Commissioner, private carrier or self-in-

sured employer after a claim is filed against the third party and prior to the disbursement of any third-party recovery."

**29.** We wish to make clear that our holding does not address the situation in which the policy was procured by or on behalf of the employee. *See* W. Va.Code § 23–2A–1 (e) ("The statutory subrogation described in this section does not apply to ... insurance coverage purchased by the injured worker or on behalf of the injured worker."); *Keffer v. Prudential Ins. Co. of America*, 153 W.Va. 813, 172 S.E.2d 714 (1970) (upholding workers' compensation exclusion in plaintiff's policy).

dier's policy. This case is remanded for further disposition consistent with this opinion.

Affirmed, in Part; Reversed, in Part; and Remanded.

Justice BENJAMIN concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

BENJAMIN, Justice, concurring in part and dissenting in part:

(Filed Nov. 20, 2012)

I concur to the majority opinion except for its finding that the circuit court committed error in determining that the plaintiffs were not entitled to auto medical payments benefits under Mr. Jenkins' employer's insurance policy. I believe that the majority opinion's finding has no basis in the precedent of this Court.

The majority opinion holds that an employee injured by a third party in the course of his employment can receive both auto medical payment benefits from his employer's insurance policy and workers' compensation benefits. To support this holding, the majority opinion incorrectly relies on this Court's opinion in *Henry v. Benyo,* 203 W.Va. 172, 506 S.E.2d 615 (1998). *Benyo* concerned underinsured motorist benefits; the instant case concerns medical payments benefits. These two types of insurance coverage serve different purposes. Medical payments coverage "permits the insured to gain speedy reimbursement for medical expenses incurred as a result of a collision without regard to the insured's fault." *Ferrell v. Nationwide Mut. Ins. Co.,* 217 W.Va. 243, 249, 617 S.E.2d 790, 796 (2005). In contrast, uninsured coverage is intended to supplement an insured's recovery from another driver in order to make the insured whole. In the instant case, Mr. Jenkins does not need a speedy reimbursement for medical expenses because workers' compensation paid his medical bills.

To support its holding, the majority opinion includes a quotation from *Benyo,* but modifies the statement in a way which I believe changes its meaning. The statement as quoted by the majority opinion is as follows:

[E]quity, fairness, and justice require that an employee, who is involved in a motor vehicle accident with a third-party during the course and scope of the employee's employment, be permitted to recover ... [auto medical] benefits under his/her employer's motor vehicle insurance policy to compensate him/her for those losses [caused] by workers' compensation [subrogation].

*Jenkins,* 230 W.Va. at 353, 738 S.E.2d at 19, citing *Benyo,* 203 W.Va. at 179, 506 S.E.2d at 622 (footnote omitted). The actual statement from *Benyo* is as follows:

equity, fairness, and justice require that an employee, who is involved in a motor vehicle accident with a third-party during the course and scope of the employee's employment, be permitted to recover, in addition to workers' compensation benefits, underinsured motorist benefits under his/her employer's motor vehicle insurance policy to compensate him/her for those losses that are not covered by workers' compensation (*e.g.,* pain and suffering, loss of enjoyment of life, loss of consortium, etc.).

*Benyo,* 203 W.Va. at 179, 506 S.E.2d at 622.

The clear point of this Court's *actual* statement in *Benyo* is that an injured employee should be permitted to recover underinsurance benefits from his or her employer's motor vehicle policy in addition to workers' compensation benefits to compensate for those losses that are *not* covered by workers' compensation. This policy makes sense because it serves to make the plaintiff whole.

In contrast, the statement as modified in the majority opinion makes no sense. Significantly, there are no losses to the plaintiff caused by workers' compensation subrogation. Such subrogation simply means that a party other than the workers' compensation provider, and of course the plaintiff, is responsible for paying the plaintiff's medical bills. If there is no other party to pay the bills, the workers' compensation provider will not have a right of subrogation. Thus, under statutory subrogation, workers' compensation may be reimbursed for payment of the plaintiff's medical bills, but regardless, the plaintiff will have his or her bills paid.

The actual effect of the law created in the majority opinion is that the plaintiff will receive a windfall by virtue of having his or her medical bills paid more than once. For example, in the instant case, Mr. Jenkins has had his medical bills paid by the workers' compensation provider. Also, he will be able to collect uninsured benefits from his employer's auto policy which sum will include medical costs. Pursuant to W. Va.Code § 23–2A–1(e) (2009), the workers' compensation provider's statutory subrogation right does not apply to the uninsured coverage so that Mr. Jenkins will receive his uninsured benefits free and clear. Finally, as a result of the majority opinion, Mr. Jenkins will receive auto medical payment benefits from his employer's policy despite the fact that his medical bills have already been paid by the workers' compensation provider. It is unclear under W. Va.Code § 23–2A–1(e), whether the workers' compensation provider will have subrogation rights against these auto medical payment benefits. Therefore, Mr. Jenkins potentially will have his medical bills paid three times over. Such a result is inexplicable to me and has no basis in reason or in law.

Accordingly, I am compelled to dissent to the majority opinion's holding that the plaintiffs are entitled to auto medical payments benefits under Mr. Jenkins' employer's insurance policy. Accordingly, I concur, in part, and dissent, in part.