# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Stephany A. Connelly and James M. Connelly, Plaintiffs,

v.

The Main Street America Group, Old Dominion Insurance Company, Allstate Fire and Casualty Insurance Company, Debbie Cohn, and Freya Trezona, Defendants,

of which Allstate Fire and Casualty Insurance Company, The Main Street America Group, and Old Dominion Insurance Company are the Petitioners,

and Stephany A. Connelly and James M. Connelly are the Respondents.

Appellate Case No. 2021-000005

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from Richland County
Jocelyn Newman, Circuit Court Judge

---

Opinion No. 28130
Heard April 6, 2022 – Filed January 11, 2023

---

## REVERSED

---

Thomas Frank Dougall and Michal Kalwajtys, both of Dougall & Collins, of Elgin, and Eugene Hamilton Matthews, of Richardson Plowden & Robinson, PA, of Columbia, all for Petitioners Old Dominion Insurance

Company and The Main Street America Group; and
Alfred Johnston Cox and Kendall Patricia Crawford, both
of Gallivan, White & Boyd, PA, of Columbia, for
Petitioner Allstate Fire and Casualty Insurance Company.

John D. Kassel and Theile Branham McVey, both of
Kassel McVey, of Columbia, for Respondent James M.
Connelly; and Bert Glenn Utsey III, of Clawson Fargnoli
Utsey, LLC, of Charleston, for Respondents Stephany A.
Connelly and James M. Connelly.

John Robert Murphy and Megan Noelle Walker, both of
Murphy & Grantland, P.A., of Columbia, for Amicus
Curiae Progressive Select Insurance Company.

---

**JUSTICE KITTREDGE:** This case involves the intersection of the uninsured motorist (UM) statute[1] with the Workers' Compensation Act (the Act).[2] Respondent Stephany Connelly was a passenger in a vehicle driven by her co-worker Freya Trezona during the course and scope of their employment when Trezona negligently caused an accident, injuring Connelly. Because workers' compensation benefits did not fully redress Connelly's injuries, Connelly made a claim for bodily injury and UM benefits with her own insurance carrier and with Trezona's carrier. Both companies denied the claim, maintaining Connelly's sole remedy lay with the Act. After Connelly filed suit seeking a declaratory judgment that both policies provided coverage, the parties agreed the dispute turned on the proper interpretation of the phrase "legally entitled to recover" found in the UM statute. *See* S.C. Code Ann. § 38-77-150(A) (stating all insurance policies must contain a UM provision "undertaking to pay the insured all sums which he is *legally entitled to recover* as damages from the owner or operator of an uninsured motor vehicle" (emphasis added)).[3] The trial court ruled in favor of Connelly,

---

[1] S.C. Code Ann. § 38-77-150 (2015).

[2] S.C. Code Ann. §§ 42-1-10 to -19-50 (2022).

[3] The terms of both insurance policies closely mirror the statutory language, stating the insurers will pay "those damages that an insured person is legally entitled to recover from the owner or operator of an uninsured auto."

finding the phrase "legally entitled to recover" ambiguous. The court of appeals concurred in the finding of ambiguity and affirmed the trial court's determination that a plaintiff merely needed to show fault on the part of the uninsured driver and resulting damages, both of which had been satisfied here.

We find the statutory phrase "legally entitled to recover" unambiguous. We conclude the amount a plaintiff is "legally entitled to recover" under a UM provision of an insurance policy is the amount for which the plaintiff has secured a judgment against the at-fault defendant. Because the Act prevents Connelly from ever becoming "legally entitled to recover" from Trezona under these facts, we reverse.

## I.

The parties jointly stipulated the underlying facts, which are not in dispute. Connelly was injured in an automobile accident while riding as a passenger in a vehicle owned and operated by Trezona. The vehicle was covered by an automobile liability insurance policy issued by Petitioner Old Dominion Insurance Company (Old Dominion).[4] Additionally, Connelly had purchased UM coverage through her own automobile insurance policy with Petitioner Allstate Fire and Casualty Insurance Company (Allstate). At the time of the accident, Connelly and Trezona were co-workers acting within the course and scope of their employment. Therefore, Connelly made a successful claim for benefits under the Act.

Connelly then sought additional compensation against her co-worker under the bodily injury provision of the Old Dominion policy, as well as under the UM provision of both the Old Dominion and Allstate (collectively, Petitioners') policies,[5] but Petitioners denied Connelly's claims. Petitioners admitted that Connelly is an insured person, as defined in the policies, and that Trezona's negligence caused the accident and Connelly's resulting injuries. However Petitioners claimed, among other things, that (1) because Connelly was injured during the course and scope of her employment, the Act provides her exclusive remedy; (2) because the Act affords tort immunity to the employer and co-workers

---

[4] Petitioner Main Street America Group is a holding company that owns Old Dominion. Its interests are identical to those of Old Dominion.

[5] The Old Dominion policy provides liability coverage of $100,000 per person and $300,000 per accident. The Allstate policy provides liability coverage of $250,000 per person and $500,000 per accident.

of an injured employee, Trezona is immune from suit by Connelly, thereby rendering Petitioners likewise immune; and thus (3) Connelly is not legally entitled to recover against Trezona or Petitioners.

Notwithstanding the exclusivity provision of the Act, Connelly filed suit, seeking a declaratory judgment that the UM provisions of both polices provided coverage for her injuries. Initially, Connelly named Petitioners and Trezona as co-defendants, but—perhaps in recognition of the statutory immunity the Act affords Trezona—Connelly later dismissed Trezona from the suit.[6] Petitioners answered, asserting Connelly was not "legally entitled to recover" from Trezona based on the plain meaning of that phrase as used in the UM statute (section 38-77-150). Petitioners and Connelly then filed cross-motions for summary judgment.

The circuit court granted Connelly's motion and denied Petitioners' motions. In relevant part, the circuit court held Trezona's vehicle was an uninsured vehicle because—despite the fact that Connelly was admittedly an insured person under the policies—Petitioners had denied coverage. *See* S.C. Code Ann. § 38-77-30(14)(b) (Supp. 2021) (defining an uninsured motor vehicle as, *inter alia*, a vehicle for which "there is nominally [bodily injury liability] insurance, but the insurer writing the same *successfully denies coverage* thereunder" (emphasis added)).

Likewise, the circuit court found the "legally entitled to recover" language of the UM statute was ambiguous, reasoning that the phrase is not defined in either the South Carolina Code or Petitioners' insurance policies, and there is a jurisdictional split on the correct interpretation of the phrase. The circuit court explained that it was therefore required to interpret the UM statute in a manner consistent with the legislature's intent, that being "to provide benefits to protect against the peril of injury or death by an uninsured motorist to an insured motorist." Thus, the circuit court held that "legally entitled to recover" meant a plaintiff merely needed to show fault on the part of the uninsured driver and damages, and the Act's provision of immunity to Trezona did not impact the availability of UM coverage to Connelly. (Citing *Borjas v. State Farm Mut. Auto. Ins. Co.*, 33 P.3d 1265 (Colo. App. 2001); *Barfield v. Barfield ex rel. Barfield*, 742 P.2d 1107 (Okla. 1987); *Torres ex rel. Torres v. Kan. City Fire & Marine Ins. Co.*, 849 P.2d 407 (Okla.

---

[6] Likewise, Connelly's husband initially asserted a claim for loss of consortium. As we explain below, the circuit court granted summary judgment on his claim, and no one challenges the propriety of that decision to this Court. We therefore do not address it further.

1993)).  Expounding on that point, the circuit court explained UM coverage could coexist with the Act's exclusive remedy in these circumstances because (1) the Act's exclusivity provision only bars tort actions, but a UM claim sounds in contract, not tort; (2) Connelly did not sue Trezona or her employer, so her claims did not run afoul of the exclusivity provision; and (3) Connelly's recovery of UM benefits did not frustrate the Act's goals, as Trezona, her employer, and the workers' compensation carrier remained unaffected by allowing Connelly to receive UM benefits.

Petitioners appealed, and the court of appeals affirmed.  *Connelly v. Main St. Am. Grp.*, 432 S.C. 122, 850 S.E.2d 627 (Ct. App. 2020).  In large part, the court of appeals concurred with the circuit court that the phrase "legally entitled to recover" is ambiguous, citing the jurisdictional split of authority on the issue.  In light of the finding of ambiguity, the court of appeals concluded Connelly was merely required to show fault and damages.  The court of appeals explained that allowing UM coverage in this situation effectuated the legislature's intent, noting the UM statute must be liberally construed in favor of coverage, and the Act only bars tort claims against employers and co-employees, not contract claims for UM benefits.

We granted Petitioners a writ of certiorari to review the decision of the court of appeals.

## II.

A declaratory judgment action to determine coverage under an insurance policy is an action at law.  *City of Hartsville v. S.C. Mun. Ins. & Risk Fin. Fund*, 382 S.C. 535, 543, 677 S.E.2d 574, 578 (2009).  In an appeal from an action at law, the Court's jurisdiction is limited to correcting errors of law.  *Pope v. Gordon*, 369 S.C. 469, 474, 633 S.E.2d 148, 151 (2006).  "The trial judge's findings of fact will not be disturbed on appeal unless the findings are wholly unsupported by the evidence or controlled by an erroneous conception of the application of the law."  *Id.*

In reviewing the grant of a motion for summary judgment, appellate courts apply the same standard as the trial court under Rule 56(c), SCRCP.  *Dawkins v. Fields*, 354 S.C. 58, 69, 580 S.E.2d 433, 438–39 (2003).  "[S]ummary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Montgomery v. CSX Transp., Inc.*, 376 S.C. 37, 47, 656 S.E.2d 20, 25 (2008).

## III.

Petitioners contend Connelly's recovery of workers' compensation benefits under the Act renders Trezona immune from lawsuits stemming from the accident. As a result, Petitioners argue Connelly is precluded from recovering under the UM provisions of the Old Dominion and Allstate policies because Connelly will never be "legally entitled to recover" against Trezona, and therefore, UM coverage under the policies will never be triggered. For purposes of this discussion, we will assume, without deciding, that Trezona's vehicle was uninsured and focus our analysis on whether Connelly is "legally entitled to recover" damages from Trezona.

South Carolina's UM statute provides, in relevant part,

> (A) No automobile insurance policy or contract may be issued or delivered unless it contains a provision by endorsement or otherwise, herein referred to as the uninsured motorist provision, undertaking to pay the insured all sums which he is *legally entitled to recover* as damages from the owner or operator of an uninsured motor vehicle . . . .
>
> (B) No action may be brought under the uninsured motorist provision *unless copies of the pleadings in the action establishing liability are served* in the manner provided by law upon the insurer writing the uninsured motorist provision. *The insurer has the right to appear and defend in the name of the uninsured motorist in any action which may affect its liability* and has thirty days after service of process on it in which to appear.

S.C. Code Ann. § 38-77-150(A)–(B) (emphasis added).

The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature. *Sloan v. Hardee*, 371 S.C. 495, 498, 640 S.E.2d 457, 459 (2007). When the statute's language is clear and unambiguous, the rules of statutory interpretation are unnecessary, as a court has no choice but to apply the statute as written. *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). This is because the language used in the statute is generally considered to be the best evidence of the legislature's intent. *Cain v. Nationwide Prop. & Cas. Ins. Co.*, 378 S.C. 25, 30, 661 S.E.2d 349, 352 (2008). As a result, "words must be given their plain and ordinary meaning without resort to subtle or forced construction to

limit or expand the statute's operation." *State v. Blackmon*, 304 S.C. 270, 273, 403 S.E.2d 660, 662 (1991).

While the precise question presented in this case is a novel one in South Carolina, we have occasionally addressed the interplay between the Act and the UM statute. Generally, the Act "provides the exclusive remedy against an employer for an employee's work-related accident or injury." *Posey v. Proper Mold & Eng'g, Inc.*, 378 S.C. 210, 224, 661 S.E.2d 395, 403 (Ct. App. 2008). "Under the scheme [set forth in the Act], the employee receives the right to swift and sure compensation; the employer receives immunity from tort actions by the employee." *Wright v. Smallwood*, 308 S.C. 471, 475, 419 S.E.2d 219, 221 (1992) (cleaned up); *see also Nolan v. Daley*, 222 S.C. 407, 416, 73 S.E.2d 449, 453 (1952) (explaining the Act confers tort immunity not only on the employer but also on any negligent co-employees).

However, "UM coverage does not sound in tort, but in contract." *Wright*, 308 S.C. at 475, 419 S.E.2d at 221. Thus, an employee injured within the course and scope of his employment may, in appropriate circumstances, recover both workers' compensation benefits and UM benefits, as the exclusivity provision of the Act does not automatically bar all contractual claims for UM benefits. *Id.*[7]

## A.

Here, the lower courts found the phrase "legally entitled to recover" is ambiguous in part because there is a jurisdictional split on how best to interpret the phrase. However, in finding the jurisdictional split legally significant, neither the circuit

---

[7] It is nonetheless worth noting that the Act does not contain a provision expressly authorizing the receipt of UM benefits in the event workers' compensation benefits do not fully redress the employee's injuries—a perhaps notable omission that stands in contrast to a provision in the Tort Claims Act. *See* S.C. Code Ann. § 15-78-190 (2005) ("If the amount of the verdict or judgment is not satisfied by reason of the monetary limitations of this chapter upon recovery from the State or political subdivision thereof, the plaintiff's insurance company, subject to the . . . uninsured defendant provisions of the plaintiff's insurance policy, if any, shall compensate the plaintiff for the difference between the amount of the verdict or judgment and the payment by the political subdivision. If a cause of action is barred [entirely] under § 15-78-60 of the 1976 Code, the plaintiff's insurance company must compensate him for his losses subject to the aforementioned provisions of his insurance policy.").

court nor the court of appeals analyzed the specific statutory language used by the various jurisdictions to determine whether their UM statutes or workers' compensation acts were worded differently from our own. A jurisdictional split—standing alone—does not render ambiguous a South Carolina statute dealing with the same subject matter. Relying on other states' interpretations of foreign law is of little use in determining and effectuating the legislative intent underlying our own UM statute.[8]

Compounding the error, in resolving the supposed ambiguity in the UM statute, the court of appeals relied heavily on a case decided by the Supreme Court of Appeals of West Virginia, *Jenkins v. City of Elkins*, 738 S.E.2d 1 (W. Va. 2012). *Jenkins* dealt with a situation in which an employee was injured in a motor vehicle accident with a *third party*. *Id.* at 4, 12. The West Virginia Supreme Court itself acknowledged that this is an entirely distinct factual scenario from one in which an employee is injured by a negligent *co-employee*. *See id.* at 12 (quoting *Henry v. Benyo*, 506 S.E.2d 615, 619 (W. Va. 1998)).[9] In fact, most state courts have interpreted differently the legislative intent behind and requirements of their individual UM statutes when the tortfeasor is a co-employee rather than a third party. Our court of appeals, quoting *Jenkins*, found a "slight majority" of

[8] For example, the Supreme Court of Colorado found even if the court were to assume (without deciding) that "legally entitled to recover" meant merely fault and resulting damages, the particular language of Colorado's workers' compensation act nonetheless barred an injured employee's claim for UM benefits. *See Ryser v. Shelter Mut. Ins. Co.*, 480 P.3d 1286, 1290–91 (Colo. 2021) (en banc). We find this recent interpretation of Colorado law particularly significant given that the lower courts here relied in part on the *Borjas* case decided by the Colorado Court of Appeals in 2001.

[9] Specifically, the *Jenkins* court distinguished another of its prior decisions in which—as is the case in the instant appeal—an employee-plaintiff was injured in a motor vehicle accident caused by his negligent co-employee and attempted to recover UM benefits in addition to workers' compensation benefits. *See Wisman v. Rhodes*, 447 S.E.2d 5, 8–9 (W. Va. 1994) (disallowing the recovery of UM benefits in that circumstance due to the exclusivity provision in West Virginia's workers' compensation act). The *Jenkins* court explained that "the scope of the *Wisman* decision is limited to those motor vehicle accidents involving two employees. *Wisman* does not discuss the situation here at hand regarding motor vehicle accidents between an employee and a third-party nonemployee." 738 S.E.2d at 12 (quoting *Henry*, 506 S.E.2d at 619).

jurisdictions held a plaintiff was required only to establish the tortfeasor's fault and the amount of the plaintiff's damages. However, as we explain more fully below, that "slight majority" deals with the distinct factual situation presented in *Jenkins*, in which there was a third-party tortfeasor. In contrast, when looking only at cases dealing with motor vehicle accidents caused by a negligent co-employee, the jurisdictional split is decidedly different from the one examined in *Jenkins*.[10] Due to the factual and legal distinctions present when the tortfeasor is a co-employee, the court of appeals' reliance on *Jenkins* was misplaced.

**B.**

Looking solely at the language used by our General Assembly in the UM statute, we find the phrase "legally entitled to recover" is wholly unambiguous: it means a plaintiff has secured a judgment against an at-fault defendant after overcoming any defenses the defendant may have presented. After all, it is only then that the plaintiff becomes *legally* entitled to recover against that defendant. We reject the lower courts' interpretation of the UM statute as requiring a plaintiff to show only fault and resulting damages. Such a reading automatically negates any defenses the at-fault driver could present, such as the statute of limitations, comparative negligence, or statutory immunity. We see nothing in the language of the UM statute to suggest the legislature intended that result.

While not necessary to interpret our own state statute, we briefly note our reading of the legislative intent underlying section 38-77-150, as applied to motor vehicle accidents caused by negligent co-employees, dovetails with the near-unanimous national approach to this factual scenario. We say this while acknowledging our decision not to parse the language of each individual state's statutes related to UM coverage or workers' compensation, for regardless of the language used by each individual legislature, there appears to be a "nationwide" legislative intent (as interpreted by each state's courts). Specifically, it appears legislatures collectively intended that their state's workers' compensation act serve as the exclusive remedy for an employee who seeks recompense for injuries caused by a negligent co-employee in an automobile-related accident that occurs during the course and

---

[10] Tellingly, in *Jenkins*'s tallying of various jurisdictions' approaches to the proper interpretation of the phrase "legally entitled to recover," the overwhelming majority of jurisdictions in its purported "slight majority" dealt with third-party accidents, whereas the overwhelming majority of jurisdictions in the "minority approach" dealt with co-employee accidents. *See* 738 S.E.2d at 12–14 (collecting cases).

scope of his employment. It necessarily follows that the workers' compensation acts' immunity provisions ensure the injured worker will never be "legally entitled to recover" against his co-employee. *See* 10 *Larson's Workers' Compensation Law* § 110.05[10] (2021) ("Ordinarily, for the uninsured motorist clause to operate in the first place, the uninsured third person must be legally subject to liability. Thus, if the third person is specifically made immune to tort suit by the compensation act's exclusive remedy clause, the uninsured motorist provision does not come into play. In the familiar example of co-employee immunity, the issue thus becomes whether the accident was in the course of employment; if it was, the uninsured motorist carrier has no liability." (internal footnotes omitted) (collecting cases)); John P. Ludington, Annotation, *Automobile uninsured motorist coverage: "legally entitled to recover" clause as barring claim compensable under workers' compensation statute*, 82 A.L.R.4th 1096 § 2 (1990) ("Does the tort immunity of an employer or co[-]employee mean that an injured employee is not 'legally entitled to recover' from the employer or co[-]employee, and therefore cannot receive uninsured motorist benefits for vehicular injuries received in an accident arising out of, and in the course of, employment? The answer is yes, with [limited] dissent and some qualifications. *Insofar as the uninsured motorist coverage has been bought and paid for by someone other than the injured employee, **the results have been uniform**. The injured employee cannot recover uninsured motorist benefits under the uninsured motorist coverage in policies obtained by his or her employer, partner, or the negligent co[-]employee.* The more common situation is where the injured employee attempts to secure uninsured motorist benefits under his or her own automobile insurance policy. Does it matter that the employee himself or herself obtained and paid for this uninsured motorist coverage? *Most courts which have considered the question have held no, since the workers' compensation statute grants tort immunity to a negligent employer or co[-]employee, and therefore the injured employee is not 'legally entitled to recover' from either of them*." (emphasis added) (internal citations omitted)); *see also Ex parte Carlton*, 867 So. 2d 332 (Ala. 2003) (following the majority approach in holding the workers' compensation act is the employee's exclusive remedy); *Perkins v. Emps. Mut. Cas. Co.*, 507 F. Supp. 3d 1172 (D. Ariz. 2020) (same, applying Arizona law); *Ryser v. Shelter Mut. Ins. Co.*, 486 P.3d 344 (Colo. App. 2019) (same), *aff'd on other grounds*, 480 P.3d 1286; *Allstate Ins. Co. v. Boynton*, 486 So. 2d 552 (Fla. 1986) (same); *Williams v. Thomas*, 370 S.E.2d 773 (Ga. Ct. App. 1988) (same); *Atl. Mut. Ins. Co. v. Payton*, 682 N.E.2d 1144 (Ill. App. Ct. 1997) (same); *O'Dell ex rel. O'Dell v. State Farm Mut. Auto. Ins. Co.*, 362 N.E.2d 862 (Ind. Ct. App. 1977) (same); *Otterberg v. Farm Bureau Mut. Ins. Co.*, 696 N.W.2d 24 (Iowa 2005) (same); *Chance v. Farm Bureau Mut. Ins. Co.*, 756 F. Supp. 1440 (D. Kan. 1991) (same, applying Kansas law); *State Farm Mut. Auto.*

*Ins. Co. v. Slusher ex rel. Slusher*, 325 S.W.3d 318 (Ky. 2010) (same); *Hebert v. Clarendon Am. Ins. Co.*, 984 So. 2d 952 (La. Ct. App. 2008) (same); *Hopkins v. Auto-Owners Ins. Co.*, 200 N.W.2d 784 (Mich. Ct. App. 1972) (per curiam) (same); *Peterson v. Kludt ex rel. Lyczewski*, 317 N.W.2d 43 (Minn. 1982) (same); *Medders v. U.S. Fid. & Guar. Co.*, 623 So. 2d 979 (Miss. 1993) (same); *Kesterson v. Wallut*, 157 S.W.3d 675 (Mo. Ct. App. 2004) (same); *Okuly ex rel. Okuly v. USF & G Ins. Co.*, 78 P.3d 877 (Mont. 2003) (same); *Matarese v. N.H. Mun. Ass'n Prop.-Liab. Ins. Tr., Inc.*, 791 A.2d 175 (N.H. 2002) (same); *Kough v. N.J. Auto. Full Ins. Underwriting Ass'n*, 568 A.2d 127 (N.J. Super. Ct. App. Div. 1990) (same); *Vasquez v. Am. Cas. Co. of Reading*, 389 P.3d 282 (N.M. 2016) (same); *Hauber-Malota v. Phila. Ins. Cos.*, 991 N.Y.S.2d 190 (App. Div. 2014) (same); *Stuhlmiller v. Nodak Mut. Ins. Co.*, 475 N.W.2d 136 (N.D. 1991) (same); *Sims v. Marren*, 36 N.E.3d 780 (Ohio Ct. App. 2015) (same); *Cope v. W. Am. Ins. Co. of the Ohio Cas. Grp.*, 785 P.2d 1050 (Or. 1990) (en banc) (same); *Petrochko v. Nationwide Mut. Ins. Co.*, 15 Pa. D. & C.5th 312 (C.P. 2010) (same), *aff'd*, 38 A.3d 917 (Pa. Super. Ct. 2011); *Soledad v. Tex. Farm Bureau Mut. Ins. Co.*, 506 S.W.3d 600 (Tex. App. 2016) (same); *Welch ex rel. Welch v. Miller & Long Co. of Md.*, 521 S.E.2d 767 (Va. 1999) (same); *Romanick v. Aetna Cas. & Sur. Co.*, 795 P.2d 728 (Wash. Ct. App. 1990) (same); *Wisman*, 447 S.E.2d 5 (same); *cf. State Farm Mut. Auto. Ins. Co. v. Royston*, 817 P.2d 118 (Haw. 1991) (holding, in part based on the co-employee related cases, that an injured government employee could not recover under his own UM policy because he had received workers' compensation benefits and therefore would not be "legally entitled to recover" against his employer, as the owner of the uninsured vehicle); *Lieber v. ITT Hartford Ins. Ctr., Inc.*, 15 P.3d 1030 (Utah 2000) (involving a claim for UM benefits brought by an employee injured in an accident with a third-party, but nonetheless analyzing the state's UM and workers' compensation statutes and concluding that the exclusive remedy of the workers' compensation act only prevented the employee from becoming "legally entitled to recover" against an employer or co-employee, not a third party).

We too believe our legislature, like the legislatures of the overwhelming majority of jurisdictions around the country, intended the Act to be the exclusive remedy since the injured employee will never be "legally entitled to recover" against his co-employee.

## C.

Subsection (B) of the UM statute provides further support for our conclusion that the General Assembly intended the "legally entitled to recover" language in subsection (A) to mean the injured motorist must prove he has a viable claim that

is able to be reduced to judgment in a court of law, rather than merely fault and resulting damages. Specifically, subsection (B) states that an action for UM benefits may not be brought "unless copies of the pleadings in the action establishing liability" are served on the insurer, and the insurer "has the right to appear and defend in the name of the uninsured motorist in any action which may affect its liability." S.C. Code Ann. § 38-77-150(B). From this language, it is manifest the General Assembly has imposed several hurdles as conditions precedent to recovering UM benefits: (1) an injured motorist must file a tort suit against the at-fault driver prior to seeking contractual UM benefits from an insurer, and (2) a copy of the pleadings from that tort suit must be served on the insurer so as to allow it to limit its possible exposure in the event of an adverse judgment.

As we have explained previously,

> The right to sue and collect from one's own liability insurance carrier in case of a loss caused by [an uninsured motorist] is a creature of the legislature. Except for the statute, and endorsements required, no right exists to recover from one's own insurance carrier. *One must look to the terms of the [UM] statute and policy endorsements and comply therewith to get the benefit of law.*

*Criterion Ins. Co. v. Hoffmann*, 258 S.C. 282, 290, 188 S.E.2d 459, 462 (1972) (emphasis added) (interpreting the prior version of the UM statute, which included language identical to the current subsection (B)).

To that effect, we have repeatedly emphasized the importance of an injured motorist filing a tort suit and establishing the liability of the uninsured motorist prior to filing suit for UM benefits against an insurer. *See Laird ex rel. Laird v. Nationwide Ins. Co.*, 243 S.C. 388, 394, 134 S.E.2d 206, 209 (1964) ("Recovery under the uninsured endorsement *is subject to the condition* that the insured establish legal liability on the part of the uninsured motorist. Such an action is one *ex delicto* and the only issues to be determined therein are the liability and the amount of damage. *After judgment is entered against the uninsured motorist*, a direct action *ex contractu* can be brought to recover from the insurance company on its endorsement . . . ." (emphasis added)); *see also Lawson v. Porter*, 256 S.C. 65, 68–69, 180 S.E.2d 643, 644 (1971) (collecting cases outlining the same requirement); *cf. Williams v. Selective Ins. Co. of Se.*, 315 S.C. 532, 534, 446 S.E.2d 402, 404 (1994) (making a similar observation about the requirements of the underinsured motorist (UIM) statute, S.C. Code Ann. § 38-77-160 (2015)).

We have further explained the UM insurance carrier has a right to demand strict compliance with subsection (B) of the UM statute. *See Criterion Ins. Co.*, 258 S.C. at 294, 188 S.E.2d at 465. In doing so, we noted the language used in subsection (B) is clear and unambiguous, and therefore, there was no room to apply the rules of statutory construction. *See id.* at 292, 188 S.E.2d at 463 ("Most courts take a liberal view when dealing with the question of coverage; *however, the procedural obligations that the insured must discharge in order to recover, since they are prescribed by statute, are viewed by the courts as mandatory, and strict compliance with them is a prerequisite to recover*." (emphasis added)).

Thus, an insurer must be served with copies of the pleadings in the underlying tort suit against the uninsured motorist, and those pleadings must include "the formal allegations by the parties of their respective claims *and defenses*." *Id.* at 290, 292, 188 S.E.2d at 462, 464 (emphasis added) (citation omitted) ("For reasons satisfactory to the legislature, service of the pleadings is required in the usual uninsured motorist suit." (internal quotation marks omitted)). In this manner, the insurer is afforded the opportunity to investigate and "take such steps as it deems necessary to protect its interest"—a matter of no small importance to the insurer given that it will be required to pay (within policy limits) any judgment entered against the uninsured motorist. *Squires ex rel. Squires v. Nat'l Grange Mut. Ins. Co.*, 247 S.C. 58, 69, 145 S.E.2d 673, 678–79 (1965); *see also Criterion Ins. Co.*, 258 S.C. at 290, 188 S.E.2d at 462 ("It is the province of the lawmakers to create a right of action, to provide for process and to declare the procedure for collecting from one's own insurance carrier. They did just that."); *Park v. Safeco Ins. Co. of Am.*, 251 S.C. 410, 413–15, 162 S.E.2d 709, 710–11 (1968) (rejecting an injured motorist's attempt to proceed against the UM carrier in the first instance without filing the initial tort suit against the at-fault, uninsured driver).

The fact that the "pleadings" that must be served on the insurers include possible defenses necessarily lends support to our conclusion that the UM statute requires a factfinder to consider the presence and viability of any defenses to liability in a separate tort action. Were we to read "legally entitled to recover" as only requiring fault and resulting damages, as urged by Connelly and held by the lower courts here, an injured motorist would never need to acknowledge the existence or merit of any possible defenses to liability, thereby contravening the purpose of the notice provision in section 38-77-150(B).

Here, Connelly did not file a separate tort suit against Trezona, much less secure a judgment against her, so she is not "legally entitled to recover" against Trezona. While it is understandable why Connelly did not sue Trezona in tort—the Act indisputably provides Trezona with an ironclad defense to any possible liability—

Connelly's failure to follow the substantive requirements of the UM statute are fatal to any possible claim against Petitioners for UM benefits.

## IV.

While our holding today is on firm legal footing, we note our disquiet at the result: Connelly—who paid for UM and UIM coverage—will not receive the benefit of her contractual bargain with Allstate, through no fault of her own. We can think of no other step Connelly could have taken to protect herself from this type of circumstance: she was not driving, she did not cause or contribute to the accident, she had automobile insurance, and she paid additional amounts for UM and UIM coverage. As a result, Connelly's argument—that our reading of the UM statute runs counter to the underlying legislative intent—has equitable appeal. *See Laird*, 243 S.C. at 392, 134 S.E.2d at 208 (explaining the purpose of UM coverage "was to provide financial recompense to innocent persons who receive bodily injuries . . . through the wrongful conduct of uninsured motorists").

However, ruling in favor of Connelly would require us to contort the plain meaning of "legally entitled to recover" and materially rewrite the notice provision in subsection (B) to provide an exception in the case of accidents caused by negligent co-employees who, by function of the Act, are immune from tort suits. There is nothing in the language of the UM statute or the Act that leads us to believe the legislature intended us to take such liberties—particularly when contrasted with an explicit provision of the Tort Claims Act addressing a similar possibility. *See* S.C. Code Ann. § 15-78-190 (stating that if an award under the Tort Claims Act is insufficient to redress the plaintiff's injuries in full, and UM coverage would otherwise be available to cover the plaintiff's damages, the UM carrier shall compensate the plaintiff within the limits of the policy). Given that the Tort Claims Act expressly contemplates and allows UM coverage in the event of an injured plaintiff's incomplete recovery, it is clear the legislature knows how to provide a statutory exemption to tort immunity or damage limitations on an insured's rights against a tortfeasor. We find the fact that the legislature chose not to include a similar exemption in the UM statute or the Act significant. *See* 82 C.J.S. *Statutes* § 460 (2009) ("[W]here a statute contains a given provision, the omission of such a provision from a similar statute concerning a related subject is significant to show that a different intention has existed.").

We decline the invitation to rewrite the statute or construe it in a manner manifestly at odds with its plain meaning. Connelly's remedy in this instance is not with the courts, but with the legislature. *See Criterion Ins. Co.*, 258 S.C. at 294, 188 S.E.2d at 464 ("The statute made service of a copy of the [pleadings] upon [the

insurer] a condition precedent to [the plaintiff's] recovery.  If it is advisable that the statute be changed, it is within the province of the legislature to do so.  For the courts to set about to [change the requirements of the UM statute themselves] would inevitably lead to the establishment of a mischievous precedent, and to great uncertainty and confusion in the determination of future cases of a similar nature. It is needless to describe the effects of such a condition of things in order to appreciate the necessity of avoiding it." (citation omitted) (internal quotation marks omitted)).

## V.

This case presents a straightforward question of the correct interpretation of the UM statute, particularly the "legally entitled to recover" language of subsection (A) and the notice provision of subsection (B).  *See* S.C. Code Ann. § 38-77-150.  Any unease with today's result lies in the outcome of that interpretation, for our holding today arguably does not comport with equity and one's sense of fairness.  We state the obvious: we are a court, not a legislative body.  We are thus constrained by our judicial role to interpret the law as written and not to create exceptions to plainly-worded statutes.  That is the province of the legislature alone, and a boundary we do not cross, even in sympathetic situations such as this.

The decision of the court of appeals is

**REVERSED.**

**BEATTY, C.J., HEARN, FEW and JAMES, JJ., concur.**